```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

| | |
|---|---|
| RONALD D. LORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 05-276 (Erie) |
| | ) |
| JO ANNE B. BARNHART, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

Plaintiff, Ronald D. Lord, seeks judicial review of a decision of defendant, Jo Anne B. Barnhart, Commissioner of Social Security ("the Commissioner"), denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. Presently before the Court are the parties' cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, plaintiff's motion for summary judgment will be denied and the Commissioner's cross-motion for summary judgment will be granted.

## II. Background

### A. Procedural History

On March 6, 2003, plaintiff protectively filed applications for DIB and SSI, alleging disability since November 23, 2002 due to three herniated discs in his lower back.[1] (R. 40-42, 53, 193-96). Following the denial of plaintiff's applications (R. 33-36, 198-201), he requested a hearing before an Administrative Law Judge ("ALJ"). (R. 37-38). Plaintiff, who was represented by counsel, testified at the hearing which was held on May 13, 2004. (R. 207-22).

On July 23, 2004, the ALJ issued a decision denying plaintiff's applications for DIB and SSI. (R. 18-24). Specifically, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to perform a full range of sedentary work.[2] (R. 24, Finding No. 7). Plaintiff requested

---

[1] In order to establish a disability under the Social Security Act, a claimant must demonstrate an inability to engage in any substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1). A claimant is considered unable to engage in any substantial gainful activity only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

[2] RFC is the most a disability claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545(a). Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files,

review of the ALJ's decision; however, the request was denied by the Appeals Council on July 22, 2005.  (R. 4-6, 13).  This appeal followed.

### B. Facts

At the hearing before the ALJ, plaintiff testified as follows:

Plaintiff's date of birth is June 25, 1971.[3]  Plaintiff attended high school through the eleventh grade.  Subsequently, he completed the requirements for a Graduate Equivalency Diploma.  Plaintiff also completed the requirements for a state inspection license in automobile mechanics.  Plaintiff worked as an auto mechanic from 1996 until November 23, 2002, when he sustained a back injury while lifting a refrigerator onto the bed of a pick-up truck.[4]  (R. 210).

Despite physical therapy and epidural steroid injections, plaintiff has obtained no relief from the pain in his back.  He takes Vicodin for back pain three times a day and Flexeril for

---

ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  20 C.F.R. § 404.1567(a).

[3]Plaintiff was 33 years old at the time of the ALJ's decision.

[4]From 1989 to 1995, plaintiff worked as a delivery person for a furniture store.  Plaintiff sustained a previous injury to his back in 1995.  (R. 210, 212).

3

muscle spasms as needed. Plaintiff's doctor placed a lifting restriction on him of 10 to 12 pounds, and he "probably" could walk a block without stopping to rest. Plaintiff's ability to stand and sit is limited to a few minutes each, and he must "constantly keep changing positions." (R. 211-15).

With respect to activities of daily living, plaintiff stays home "all the time" and assists his fiancee in taking care of their children.[5] Occasionally, plaintiff drives to the grocery store, which is located two to three miles from his house. (R. 216-17). Plaintiff spends some time at his computer during the day, taking classes in computer repairs through a home schooling program. (R. 214).[6]

### C. Evidence from Treating Sources and State Agency Physicians

The administrative record in this case contains the following evidence:

---

[5] During the hearing before the ALJ, plaintiff testified that he has three children and his fiancee has four children. One of plaintiff's children and his fiancee's four children live with them. Plaintiff's other two children stay with him on the weekends. (R. 217).

[6] In a Daily Activities Questionnaire completed by plaintiff on May 1, 2003, approximately a year before the ALJ hearing, plaintiff indicated that the children and their pets depend on him for care; that he gets the children ready for school; that, although it is difficult, he does not need any special help or reminders to take care of his personal needs (i.e., washing, bathing, dressing, shaving); that he can load and unload light grocery bags into and out of the car; and that he participates in activities such as fishing and picnics once a month. (R. 70-79).

4

### 1. Office Note of Luis L. Gomez, M.D. - 11/27/02

Dr. Gomez is plaintiff's family physician. An office note dated November 27, 2002 indicates that plaintiff sought treatment from Dr. Gomez for complaints of back problems persisting for about one week. (R. 151).

### 2. MRI Report - 12/12/02

Plaintiff underwent an MRI of the lumbar spine on December 12, 2002. The MRI showed a small disc herniation to the left at L1-2, a thin broad-based disc herniation at the L4-5 level with extension into both foramina with mild foraminal narrowing, and foraminal disc herniation on the right at the L5-S1 level. (R. 160).

### 3. Letter of James R. Macielak, M.D. - 1/14/03

Dr. Macielak, an orthopedic surgeon, evaluated plaintiff on January 14, 2003 at Dr. Gomez's request. In a follow-up letter to Dr. Gomez, Dr. Macielak described his impression of plaintiff's condition as follows:

```
IMPRESSION:     1. HNP L4-5, 5-1
                2. Degenerative disc disease L1-2, 4-5, less
                   so 5-1
                3. Lumbar myofascial syndrome.
```

Dr. Macielak indicated that plaintiff would be referred to physical therapy, and that plaintiff was not capable of working from the date of his back injury on November 23, 2002 until June 2003. (R. 90-92).

**4.  Records of Meadville Medical Center - 1/21/03 to 2/21/04**

The records of Meadville Medical Center show that plaintiff underwent physical therapy at that facility from January 21, 2003 to February 21, 2003.  (R. 98-104).

**5.  Note of Moses G. Jones, M.D. - 1/23/03**

Dr. Jones is a neurological surgeon to whom plaintiff was referred by Dr. Gomez for a second opinion at plaintiff's request.  The evaluation was performed on January 23, 2003.  In a follow-up note to Dr. Gomez, Dr. Jones stated that he saw "no real objective evidence of any significant abnormality," and that he had nothing to suggest in terms of treatment for plaintiff. (R. 151, 159).

**6.  Records of Mark Foster, M.D. - 2/21/03**

At Dr. Macielak's request, Dr. Foster, an orthopedic surgeon, evaluated plaintiff on February 21, 2003.  In his office notes, Dr. Foster described his impression of plaintiff's back problem as lumbar sprain at the L4-5 level and degenerative disc disease.  Dr. Foster indicated that plaintiff was not a surgical candidate, and he recommended further physical therapy.  (R. 132).

**7.  Records of Dr. Macielak - 2/25/03**

Dr. Macielak saw plaintiff for a follow-up visit on February 25, 2003.  Plaintiff reported that his condition remained the same, and that his course of physical therapy had been

unsuccessful.  Dr. Macielak reviewed treatment options with plaintiff, and plaintiff indicated a desire to proceed with epidural steroid injections.  (R. 87).

### 8.  Records of Meadville Medical Center - 3/12/03 to 4/17/03

Plaintiff was evaluated at the Pain Management Center of Meadville Medical Center on March 12, 2003, for continued complaints of lumbosacral pain with radiation into the legs.  Notes of the evaluation indicate that an EMG nerve conduction study would be ordered for plaintiff to rule out bilateral radiculopathy, and that plaintiff was scheduled for epidural steroid injections.  Plaintiff underwent such injections on March 13, 2003 and April 17, 2003.  (R. 155-58).

### 9.  Records of the Mind, Body, Wellness Center - 3/31/03

On March 31, 2003, plaintiff underwent an electrophysiologic evaluation for lumbar pain, lower extremity pain and parasthesias.  The findings were within normal limits.  (R. 174-76).

### 10.  Report of Dr. Gomez - 5/6/03

On May 6, 2003, Dr. Gomez completed a report at the request of the Pennsylvania Bureau of Disability Determination in connection with its evaluation of plaintiff's eligibility for DIB and SSI.  Dr. Gomez noted that plaintiff has a history of radiating low back pain; that plaintiff does not suffer from paravertebral muscle spasm; that plaintiff's straight leg raising

tests were negative; that plaintiff's sensation and reflexes were within normal limits; that plaintiff's motor power was 4/5; that plaintiff had full range of motion in his lumbar region and slight limitations in his cervical range of motion; that plaintiff did not require a hand held assistive device for ambulation; that plaintiff's gait was normal; that plaintiff's ability to engage in the following activities was within normal limits: (a) get on and off the examining table, (b) walk on heels and toes, (c) squat, (d) rise from a squatting position and (e) rise from a chair; and that plaintiff's prognosis was good.  (R. 125-29).

### 11.  Records of Dr. Foster - 5/16/03

During a follow-up visit with Dr. Foster on May 16, 2003, plaintiff continued to complain of back pain.  In his office notes, Dr. Foster indicated that plaintiff's physical examination showed "symptom magnification," noting that plaintiff's findings were "minimal" and that plaintiff was "focused on surgery as an easy way out."  (R. 132-33).

### 12.  Residual Physical Functional Capacity Assessment - 5/29/03

On May 29, 2003, a State agency physician completed a residual physical functional capacity assessment for plaintiff based on a review of plaintiff's file.  (R. 134-39).  With respect to exertional limitations, the physician opined that (a)

plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds; (b) plaintiff could stand and/or walk about 6 hours in an 8-hour workday; (c) plaintiff could sit about 6 hours in an 8-hour workday; and (d) plaintiff's ability to push and pull with his upper and lower extremities was unlimited.[7]  (R. 135).  As to postural limitations, the physician opined that plaintiff was limited to climbing, balancing, stooping, kneeling, crouching and crawling only occasionally.[8]  (R. 136).  Finally, as to the symptoms reported by plaintiff to his treating sources, the physician concluded that plaintiff's statements were not credible.  (R. 138).

### 13.  Records of Dr. Macielak - 6/26/03

On June 26, 2003, plaintiff saw Dr. Macielak for a follow-up visit.  In his office notes, Dr. Macielak indicated that plaintiff continued to complain of pain; that he appeared to be in distress; that he had limited range of motion and positive straight leg raising testing; and that he had undergone epidural steroid injections without success.  Dr. Macielak suggested that

---

[7] In reaching his opinion regarding the extent of plaintiff's exertional limitations, the physician relied on evidence from Dr. Gomez, Dr. Foster and Dr. Macielak, as well as the records of the Pain Management Center of Meadville Medical Center.  (R. 136).

[8] With regard to manipulative, visual, communicative and environmental limitations, the physician opined that plaintiff had none.  (R. 136-37).

9

plaintiff undergo a lumbar myelogram with CT scanning due to his multiple levels of disease.  (R. 173).

**14.  Records of Meadville Medical Center - 7/8/03**

Plaintiff underwent a lumbar myelogram with CT scanning on July 8, 2003.  The myelogram showed "mild spinal stenosis at the L2-3 and L3-4 levels that is predominantly due to congenital shortening of the pedicles."  (R. 153-54).

**15.  Records of Dr. Macielak - 7/22/03**

Plaintiff saw Dr. Macielak for a follow-up visit on July 22, 2003.  In his office notes, Dr. Macielak indicated that plaintiff remained "quite symptomatic;" that the only thing he saw on plaintiff's myelogram was "some neural impingement at 1-2 and 2-3" with spinal extension; that plaintiff was not a surgical candidate due to the lack of "evidence of nerve irritation or disease in addition to the fact that there is no significant neurogenic compression demonstrated on the myelo CT;" and that plaintiff would be referred for pain management "on a nonoperative basis."  (R. 166, 169).

**16.  Records of Amarish S. Potnis, M.D. - 7/28/03 to 4/23/04**

At the request of Dr. Macielak, Dr. Potnis, a physiatrist, evaluated plaintiff on July 28, 2003.  During the evaluation, plaintiff reported constant low back pain radiating down to his toes which increased with sitting and driving.  Plaintiff's neurological examination revealed strength in the lower

extremities of 5/5, intact sensation and reflexes, the absence of an antalgic gait, range of motion of the lumbar spine within functional limits, and a focal trigger point in the right lumbar paraspinal region.  Dr. Potnis's plan of treatment for plaintiff consisted of a trial of trigger point injections of Lidocaine and Kenalog.  (R. 190-91).

Plaintiff presented to Dr. Potnis for a follow-up visit on October 10, 2003, reporting that the trigger point injection "didn't help him" and that his pain had not changed.  Plaintiff's strength in his lower extremities remained 5/5, and his range of motion in the lumbar spine was "effort limited" with "some focal myofascial tenderness in the lower lumbar paraspinal region." Dr. Potnis changed plaintiff's medication and instructed him to follow-up in four to five weeks.  (R. 188).

Plaintiff presented to Dr. Potnis for additional follow-up visits on February 23, 2004, March 26, 2004 and April 23, 2004, during which he reported no change in his pain, his neurological examinations showed strength of 5/5 in his lower extremities and negative straight leg raise testing, and his musculoskeletal examinations showed limited range of motion in the lumbar spine and some muscle spasm.  (R. 185-87).

### 17.  Report of Garrett W. Dixon, M.D. - 1/23/04

On January 23, 2004, Dr. Dixon conducted a consultative examination of plaintiff for purposes of DIB and SSI.  With

respect to plaintiff's physical examination, Dr. Dixon described plaintiff as "a well-developed male, who demonstrated many pain behaviors," noting that plaintiff "walked into the examination room slowly and stiffly," "had difficulty rising from sitting," "use (sic) both arms to assist himself on and off the examination table," and "had difficulty removing his shoes and socks." Dr. Dixon noted that there was tenderness in plaintiff's lumbar region, but that "no true spasm could be appreciated [in the paraspinal muscles] mostly because of the way he stood, slightly arching the low back." In his assessment, Dr. Dixon stated, *inter alia*, that plaintiff "demonstrates many pain behaviors, out of proportion to the physical and radiological findings....," suggesting "a chronic pain syndrome."

Dr. Dixon completed an assessment of plaintiff's ability to perform physical work-related activities based "purely" on the symptoms reported by plaintiff due to the lack of objective findings "to guide establishment of physical capacities." (R. 179). In the assessment, Dr. Dixon opined that (1) plaintiff could occasionally lift 10 pounds and frequently lift 2 to 3 pounds; (2) plaintiff could stand/walk 2 to 3 hours in an 8-hour workday with interruptions every 15 minutes; (3) plaintiff could sit 4 to 6 hours in an 8-hour workday with interruptions every 30 minutes; (4) plaintiff could never climb, stoop, kneel, crouch or crawl; (5) plaintiff could occasionally balance; and (6)

plaintiff required frequent position changes for comfort. (R. 177-84).

### III. Legal Analysis

#### A. Jurisdiction and Standard of Review

The Court has jurisdiction of this appeal under 42 U.S.C. § 405(g) and § 1383(c)(3) (incorporating Section 405(g)), which provide that an individual may obtain judicial review of any final decision of the Commissioner by bringing a civil action in the district court of the United States for the judicial district in which the plaintiff resides.

The Court's review of the Commissioner's decision is limited to determining whether the decision is supported by substantial evidence, which has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). It consists of something more than a mere scintilla, but something less than a preponderance. Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir.1979). Even if the Court would have decided the case differently, it must accord deference to the Commissioner and affirm the findings and decision if supported by substantial evidence. Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir.1986).

### B. The 5-Step Sequential Evaluation Process

In <u>Burnett v. Commissioner of Social Security Admin.</u>, 220 F.3d 112 (3d Cir.2000), the Third Circuit discussed the procedure an ALJ must follow in evaluating a claim for Social Security disability benefits, stating in relevant part:

*   *   *

> In <u>Plummer</u>, we recounted the five step sequential evaluation for determining whether a claimant is under a disability, as set forth in 20 C.F.R. § 404.1520:
>
>> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial gainful activity, the disability claim will be denied. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140, 107 S.Ct. 2287, 2290-91, 96 L.Ed.2d 119 (1987). In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.
>>
>> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. <u>Adorno v. Shalala</u>, 40 F.3d 43, 46 (3d Cir.1994).
>>
>> If the claimant is unable to resume her former occupation, the evaluation moves to the final step. At

>this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability.  20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity.  The ALJ must analyze the cumulative effects of all the claimant's impairments in determining whether she is capable of performing work and is not disabled.

Plummer, 186 F.3d at 428.

>                    *   *   *

220 F.3d at 118-19.

With respect to the ALJ's application of the five-step sequential evaluation process in the present case, steps one and two were resolved in plaintiff's favor: that is, based on the record, the ALJ found that plaintiff had not worked since November 23, 2002, the date of his most recent back injury, and that plaintiff suffers from severe impairments, including degenerative disc disease of the lumbar spine with some spinal stenosis, possible disc herniations of the lumbar spine and chronic back pain.  (R. 19-20).  Turning to step three, the ALJ found that plaintiff's back impairments were not sufficiently severe to meet or equal the requirements of either Listing 1.04(A) or 1.04(C) in Part 404, Subpart P, Appendix 1 of the

Social Security Regulations, relating to disorders of the spine.[9] (R. 20). As to step four, the ALJ found that plaintiff retained the RFC to perform a full range of sedentary work, but that this RFC precluded plaintiff's performance of his past relevant work which involved medium exertion or higher. (R. 22-23). Finally, regarding step five, the ALJ found that, based on plaintiff's age, education, past work experience and RFC, he was not disabled under Rule 201.28 of Table 1 of the Medical-Vocational Guidelines (the "grids") in Part 404, Subpart P, Appendix 2 of the Social Security Regulations.[10] (R. 23).

### C. Plaintiff's Argument in Support of Summary Judgment

Plaintiff asserts that the ALJ's determination that he had the RFC to perform the full range of sedentary work is not supported by substantial evidence based on his alleged need to constantly change positions as a result of low back pain. *See, e.g.*, SSR 83-10 (regarding capability to do sedentary work, "sitting should generally total approximately 6 hours of an 8-

---

[9]In this connection, the Court notes that during the hearing before the ALJ, plaintiff's counsel stated that it was plaintiff's position that he met Listing 1.04(C). (R. 221). However, a review of the brief filed in support of plaintiff's motion for summary judgment reveals that plaintiff is no longer pursuing this argument. (Doc. 11).

[10]Rule 201.28 of the grids directs a decision of "not disabled" for an individual who is limited to sedentary work, is younger (age 18 to 44), is a high school graduate or more, and has no skills from previous work experience that are transferable.

16

hour workday"); SSR 83-12 (individual who must alternate periods of sitting and standing "is not functionally capable of doing ... the prolonged sitting contemplated in the definition of sedentary work"); and SSR 96-6p (where an individual's need to alternate the required sitting of sedentary work by standing (and, possibly, by walking) periodically "cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of sedentary work will be eroded").[11]  In essence, plaintiff asserts that in determining his RFC, the ALJ erred by not giving more weight to the opinion of Dr. Dixon concerning the limitations imposed by his back condition.  After consideration, the Court finds this argument unpersuasive.

As noted in the summary of the evidence in plaintiff's file, in an assessment of plaintiff's ability to perform physical work-related activities, Dr. Dixon, who conducted a consultative examination of plaintiff in connection with his applications for DIB and SSI, indicated, in relevant part, that plaintiff (a) could stand/walk for 2 to 3 hours in an 8-hour workday with interruptions every 15 minutes, (b) could sit 4 to 6 hours in an

---

[11]Social Security Rulings are agency rulings published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.  Rulings do not have the force and effect of the law or regulations but are to be relied upon as precedents in determining other cases where the facts are basically the same.  See Allen v. Barnhart, 417 F.3d 396, 402 n.3 (3d Cir.2005).

8-hour workday with interruptions every 30 minutes, and (c) required frequent position changes for comfort. Contrary to plaintiff's position, the weight given by the ALJ to Dr. Dixon's assessment of his limitations was supported by substantial evidence.

In arguing that the ALJ failed to give sufficient weight to Dr. Dixon's assessment of his ability to perform physical work-related activities, plaintiff overlooks the following statements of Dr. Dixon in the report to which the assessment at issue is attached: "There are really no objective finding (sic) to guide establishment of physical capacities. Limitations [in the assessment] are based purely on symptoms." (R. 179). In his decision denying plaintiff's applications for DIB and SSI, however, the ALJ specifically noted that Dr. Dixon's assessment was based on plaintiff's reported symptoms, rather than objective medical evidence. Thus, in determining plaintiff's RFC, the ALJ was entitled to give less weight to Dr. Dixon's assessment and more weight to the reports and records of plaintiff's treating sources which show minimal clinical and diagnostic findings and do not support plaintiff's claim of totally disabling pain. See Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir.1999)(allegations of pain and other subjective symptoms must be supported by objective medical evidence, citing 20 C.F.R. § 404.1529). Moreover, the ALJ's finding that plaintiff's credibility

regarding totally disabling pain was questionable is supported by substantial evidence. As noted by the ALJ, both Dr. Foster, who evaluated plaintiff at Dr. Macielak's request, and Dr. Dixon, who completed the assessment on which plaintiff relies in support of his summary judgment motion, reported symptom magnification.

In sum, the Court concludes that the ALJ adequately discussed and properly analyzed all the medical evidence in the record in determining that plaintiff retained the RFC for the full range of sedentary work, which, the Court notes, represents a significantly restricted range of work. *See* SSR 96-6p ("Individuals who are limited to no more than sedentary work by their medical impairments have very serious limitations."). The Court further concludes that based on an RFC for the full range of sedentary work and plaintiff's age, education and past work experience, the ALJ properly determined that plaintiff was not disabled under Rule 201.28 of the grids. Accordingly, plaintiff's motion for summary judgment will be denied and the Commissioner's cross-motion for summary judgment will be granted.

_____
William L. Standish
United States District Judge

Date: August _3_, 2006